LORENZO VARCÁRCEL, Petitioner and Appellant, v. RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Respondent and Appellee.

No. 8370. Argued November 20, 1942.—Decided December 23, 1942.

Celestino Iriarte, F. Fernández Cuyar, and H. González Blanes for appellant. M. Rodríguez Ramos, Acting Attorney General, and José Rafael Gelpí, Assistant Attorney General, for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This appeal has been taken from a judgment which dismissed the complaint of appellant herein seeking the issuance of a peremptory writ of mandamus directed against the Treasurer of Puerto Rico ordering him to receive the

amount of $38.55 which according to the plaintiff is the amount owed by him as property taxes due on June 30, 1938, after having deducted the amount of $400 plus interest, surcharges, and costs, which deduction he claims pursuant to Act No. 22 of June 18, 1939, Special Session Laws, p. 94, and that after having received said sum with the reduction, to cancel the receipts of the taxes on real and personal property corresponding to the years 1937–38 and preceding years. The complaint is predicated upon the provisions of Act No. 22 above cited which we should examine in its pertinent part. in order to have a clear understanding of the questions which we shall discuss in this opinion.

Said Act provides that every taxpayer owing taxes to the People of Puerto Rico and who pays to the Insular Treasury the taxes levied on real and personal property for the fiscal year 1938–39 and the first half of the fiscal year 1939–40 and also the total tax indebtedness on real and personal property due on June 30, 1938, shall be entitled to have said tax indebtedness reduced by the sum of $400 plus interest, surcharges, and costs owing on said taxes, and upon receiving payment of said sum the Treasurer shall cancel such receipts for taxes on real and personal property due by the taxpayer on June 30, 1938.

The appellant paid the taxes corresponding to the fiscal year 1938–39 and to the first half of the fiscal year 1939–40, and also offered to pay the amount of $38.55 representing, according to him, the balance of property taxes due on June 30, 1938 after deducting the $400, interest, surcharges, and costs to which we have referred. The Treasurer received the amount of $38.55 but returned it to the taxpayer and alleged that the amount which he owed for taxes was $321.66 and not $38.55, "the said difference arising from the fact that the taxpayer had not included in the total taxes owed by him on June 30, 1938, those corresponding to the fiscal year 1932–33 levied on a certain rural property of 40 acres (cuer-

*das*) situated in the ward of Hato Rey, of Río Piedras, sold by appellant to said municipality by a deed of April 12, 1932.

The appellant alleges that he was not the owner of said property on January 15, 1932, because he had sold the same in September 1930 to the Municipality of Río Piedras which thereafter had been depositing its wastes therein even though no payment had been made nor had any deed been executed therefor until April 12, 1932. The appellant further contends that since no assessment of said property was made on January 15, 1932, the cases of *Teachers' Ass.* v. *Treasurer*, 54 P.R.R. 511 and *Roig* v. *Treasurer*, 54 P.R.R. 617 are not applicable.

In view of the foregoing facts the question to be decided is whether or not appellant, under the attendant circumstances, had to pay the taxes on the 40-acre property for the fiscal year 1932–33.

██ Appellant admits that the above-mentioned property was assessed in 1929 and that when the deed was executed in favor of the Municipality of Río Piedras, he appeared as owner for tax purposes; but he maintains that on January 15, 1932, no appraisal whatsoever was made.

In 1924 and thereafter, when the case of *Hernáiz, Targa & Co.* v. *Treasurer of Porto Rico*, 32 P.R.R. 608, was decided, it has been held by this court that in Puerto Rico an assessment of a previous year is *prima facie* valid for subsequent assessments and if no revision is asked or made before that date the previous assessment stands.

In the instant case it is true t hat no assessment was made on January 15, 1932, but as the one made in 1929 was then prevailing and neither the taxpayer—appellant herein—nor the municipality where the property is situated, asked for a re-assessment and since the Treasurer likewise did not deem it advisable to order the same of his own initiative, the assessment of the property made on January 15, 1932 was the same as that of 1929. Based on these premises, the

holding in the case of *Teachers' Ass.* v. *Treasurer, supra,* is applicable in that where the property is assessed in the name of a certain person on January 15 of a specific year, that person is liable for the payment of taxes on said property for the whole fiscal year beginning July 1 of said year and ending on June 30 of the following year. See, to that effect, *Roig* v. *Treasurer,* 54 P.R.R. 617.

Now the appellant insists that he sold the property to the Municipality of Río Piedras at sometime later than August 30, and therefore that on January 15, 1932, the property belonged to said municipality. However, the evidence of plaintiff himself did not support that conclusion. Dr. M. Soto Rivera, plaintiff's witness, testified that it seemed to him that in 1929 there were dealings between Mr. Varcárcel and the municipality, represented by its Mayor, Mr. Ramón Negrón Flores, for the purchase of said property. That about that time the Municipality of Río Piedras had no property on which to deposit its wastes and the witness, as Acting Mayor, and knowing that Varcárcel was going to sell the property to the municipality, asked the latter's permission to deposit the wastes on said property, which permission was granted and for which reason all the wastes were deposited there while the property still remained in the possession of Mr. Varcárcel.

In the execution of every contract of sale, according to our Civil Law, there are two stages which must not be mistaken, inasmuch as distinct juridical relations arise therefrom. The first one is the *perfection* of the contract, which arises when the contracting parties agree upon the thing which is the subject matter of the contract and upon the price, even if neither has been delivered. Section 1339 of the Civil Code (1930 ed.). Once this perfection has taken place, the contract is binding on both of them, entitling the parties reciprocally to demand the fulfillment of the con-

tract. Notwithstanding this, the ownership of the thing sold is not conveyed to the purchaser until the second stage takes place, that is, the *consummation,* which takes place at the time of the delivery of the thing sold. To this effect Manresa, commenting on §1450 of the Spanish Civil Code, says:

"At the time of the agreement and without there attaching any other circumstance, the contract, we repeat, is perfected and the obligations arise; but the conveyance of the ownership does not exist until the thing has been delivered. The delivery of the thing refers to the period of consummation; the section under our consideration deals only with fixing the period of perfection." 10 Manresa, *Código Civil Español,* p. 60.

In the case at bar, the contract of sale was perfected in 1930, but it was not consummated until April 1932, when delivery was made by the execution of the deed. Under these circumstances, we feel bound to conclude that on January 15, 1932, the appellant was the owner of the property in question and that as such he had to pay the taxes levied thereon corresponding to the fiscal year 1932–33. Since the tax for said year was not included, he could not claim the benefit of Act No. 22 of 1939 (Special Session Laws, p. 94) inasmuch as he did not comply with the condition provided by §5 of said act which reads thus:

"Section 5.—The remission provided for under §1 hereof shall be conditioned on the payment by the taxpayer to the Insular Treasury, on or before December 31, 1939, of the taxes levied on the same property for the fiscal year 1938–1939 and the first half of the fiscal year 1939–40, and, also, of the total tax indebtedness due on June 30, 1938, exclusive of the sum of four hundred (400) dollars, and interest, surcharges, and costs, as provided under said Section 2." (Italics ours.)

The lower court did not commit the error charged. The judgment appealed from must be affirmed.